## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. MOORE. (No. 3004.) *

(Court of Civil Appeals of Texas. Texarkana. Jan. 29, 1925. Rehearing Denied Feb. 12, 1925.)

1. **Master and servant ⬉88(7)—Employee going to and from work may be in employer's service.**

Employee, while going to and from work, may be in employer's service within Employers' Liability Act (Rev. St. arts. 6648, 6649), and similar statutes allowing recovery for injuries, notwithstanding contributory negligence.

2. **Appeal and error ⬉930(4), 1001(1)—Issue assumed to have been settled against appellant by jury's findings which will not be set aside if supported by evidence.**

On appeal from judgment against employer for injuries to employee, issue whether plaintiff ever received copy of, or read, employer's rules, must be assumed to have been settled against defendant by jury whose findings will not ·be set aside, unless unsupported by evidence.

3. **Master and servant ⬉243(5) — Railroad employee held entitled to recover for injuries in entering premises by usual path, though he read rules as to use of public crossings.**

Railroad employee entering employer's uninclosed premises on way to work by path openly used daily by many employees for such purpose for several years without objection by employer's officials, *held* in employer's service within Employers' Liability Act (Rev. St. arts. 6648, 6649), and hence entitled to recover for injuries from negligence of other railway employees, notwithstanding contributory negligence in attempting to go between cars of train blocking path, though he had read rules, most specific of which required employees to use public crossings when possible, but neither designated nor forbade any particular crossing.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by L. S. Moore against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Marsh & McIlwaine and Bryan Marsh, all of Tyler, for appellant.

Johnson, Edwards & Hughes, of Tyler, for appellee.

HODGES, J. This appeal is from a judgment for personal injuries sustained by appellee Moore while an employee of the appellant railway company. When injured Moore was in the service at Tyler, Tex. The appellant owned at that place several acres of ground, on which its repair shops were located in which Moore worked. Branching off from the main line of its railway, and encircling the shop buildings, ran what is called in the record a "loop track." On this track cars of various kinds and in different conditions were at times left standing. The loop was intended mainly for use in turning locomotives when the turntable was out of order. Near the loop track, and on the south side, was a public highway running east and west between Tyler and Longview, which was known as the Longview Road. Many of the shop employees, among them Moore, lived on this road a short distance east of the shops. In going to and returning from their work these employees traveled this road until they reached the proper place for entering the appellant's grounds. On. that side there were two places used by the men in crossing over the loop track and entering the shop grounds. One was a path or trail turned off from the public road at a point in line with what was apparently the shortest route to the place of work. This trail or path crossed the loop track on an embankment approximately 20 feet high. The other entrance was at a point called the "fire gap," about 400 feet or more further west. This gap was usually kept open for the entrance of firefighting machinery and for the use of the employees· in going to and from their work. The path or trail was not always kept open. Sometimes it was blocked with standing cars. When cars were across the way the man using the trail passed between them. Some would go under the couplings, and others would climb over. On the morning when injured Moore was going to his work in his usual way. He turned off from the Longview Road where the trail or path began, and followed it to the loop track. The crossing at that point was then blocked by some standing cars. Moore undertook to pass between two cars and under the coupling. While in that situation the cars were moved by a locomotive operating near the fire gap. This movement resulted in the crushing of Moore's foot so that a part of it had to be amputated. The crew were making up a train that was to go out that morning. The accident occurred about 6:30 a. m., and Moore was required to be at his work by 7 o'clock. There were several hundred employees at work in the shops, and all of them were required to register their presence by punching a clock used for that purpose. If an employee failed to punch the clock at 7 or before, he was required to wait 15 minutes, and he lost the time of waiting.

In his pleadings the appellee alleged negligence on the part of the trainmen in failing to give any warning or notice of the intended movement of the cars on the loop track. Among other defenses, the appellant pleaded that Moore was guilty of negligence in using the, path instead of the fire gap or safety crossing as a way of going to his work. It alleged that the fire gap had been · provided for such an entrance and was kept open for the convenience and· safety of those who entered the grounds on that side of the

---

loop. It was further alleged that the appellee and other employees had been directed to use that way of ingress and egress.

In response to special interrogatories submitted the jury found, in substance, as follows: (1) That the proximate cause of the injury was the negligence of the railway employees in failing to give any reasonable warning or notice of the intended movement of the cars; (2) that the path or trail used by the appellee on that occasion had been so used by a large number of the railway employees in going to and from their work, and for such a length of time, and in such a manner as to notify the appellant's agents and officials of such use, and that they impliedly acquiesced in that use; (3) that the defendant company did not through any of its agents having control of the loop track and the operation of cars thereon, give proper notice or instructions to its switching crews regarding such use by the employees; (4) that such failure was negligence and a proximate cause of the injury; (5) that the plaintiff was guilty of contributory negligence; and (6) that, after deducting the proper amount because of his contributory negligence, the plaintiff should recover as damages the sum of $8,000.

The judgment in this case is based upon those provisions of the Employers' Liability Act which allow a recovery of damages for injuries resulting from the negligence of other railway employees notwithstanding the contributory negligence of the injured servant. Those provisions appear in articles 6648, 6649 of the present Revised Statutes. The contention of the appellant on this appeal is that, under the admitted facts regarding the situation and conduct of the appellee when injured, and in view of the finding of the jury that he was guilty of contributory negligence, a judgment should have been entered for the defendant in the court below. Counsel argue that according to Moore's own version he was only a licensee on the railway premises when injured, and, being such, the statute did not protect him from the common-law result of his contributory negligence.

[1] It has been decided in this and other states that an employee, while going to and from his work, may be, in contemplation of law, in the service of his employer, in determining his right to invoke the provisions of the above and similar statutes. Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; Jones v. Casualty Reciprocal Exch. (Tex. Civ. App.) 250 S. W. 1073. Counsel for appellant concede the correctness of the above proposition, and admit that if Moore had been injured while passing over the crossing called the "fire gap," or some other crossing which had been provided by appellant for such use, contributory negligence would not in this instance defeat his right of recovery. That concession reduces the inquiry to this: Was the path or trail used by Moore on that occasion a way impliedly authorized and acquiesced in by the managing officials of the railway company, or was it one he had been directed not to so use? The jury found in favor of the appellee upon that issue.

[2] The appellant's evidence showed that the fire gap, or safety crossing, had been provided for the use of all persons having business on those premises. It proved that a book of rules had been issued and distributed among the shop employees, and Moore's receipt showed that he had received a copy. The following are the particular rules which appellant relies on as instructions to the shopmen concerning the use of ways of approach to their places of work within the loop track:

"Rule 322. Don't go under or between cars that are not protected by a blue flag or blue light."

"Rule 327. Don't use railroad tracks or right of way when off duty going to and from work; when possible use public highways, crossing, and walks."

"Rule 335. Don't cross any railroad track without first looking to the left and to the right."

Moore admitted that the receipt exhibited to him bore his signature, but denied that he had ever received a copy of the rules or had ever read them. He stated that he was an uneducated man and could read with difficulty. If that issue be an important one, we must assume that in the trial below it was settled against the appellant, and the state of the evidence is such that this court would not be justified in setting that finding aside as unsupported.

[3] But even if Moore had actually read the rules it does not follow that he had notice not to use the path he was traveling at the time he was injured. Rule 327 seems to be the most specific with reference to such instructions. But it only required the employees, "when possible, to use public highways, crossings and walks." No particular crossing was designated for their use, nor was any particular crossing forbidden. No public highway, or one which the appellant could not close at will, entered those grounds. The property was not inclosed by a fence; and presumably any one might enter and cross the loop track at any available point. In the absence of a crossing which the law would designate as public, the rules left that question largely to the judgment of the employees themselves.

The evidence shows that north of the loop was a path of entrance used by a number of the shopmen who lived on that side. The appellant had so far acquiesced and authorized the use of that path as to place steps there for the convenience of the men in crossing the track. That fact alone indicated a construction of the rule by the appellant which

did not limit the term "public crossing" to the fire gap. Moore and his witnesses testified that the path he was traveling when injured had been openly used daily by a large number of the men in going to and from their work for several years, and that there had been no objection on the part of the managing officials. If this testimony be true the jury had a right to infer, from the location of the path and the extent of its use, that the officials knew of and acquiesced in such use. In the course of time it then became either an authorized way of entrance, or one which the employees were expected to use. The appellee found it there when he entered the service, and might justly infer from its use and the surrounding circumstances that it was not improper for him to also use it as a way of going to and from his work.

The contributory negligence of which appellee was convicted by the jury consisted, doubtless, of his attempt to go between the cars and under the coupling when the path was blocked by the train.

We conclude that the appellee was, in contemplation of law, in the service of the appellant when injured, and is entitled to the benefits of the Employers' Liability Act, before referred to. We also conclude that the verdict was not excessive.

The judgment will be affirmed.